# THE LAW TIMES.

JANUARY 3, 1879.

## Common Pleas of Allegheny Co.

BENNINGTON AND WIFE VS. KLEIN, LOGAN & CO.

The mere fact that a factory may be used for the making of useful or necessary articles of trade does not prevent its being such a nuisance as would entitle one to recover damages for injuries to adjoining property.

If machinery used in a factory is of such character that in its use it so shakes the ground as to do actual physical damage to adjoining buildings, by shaking down or cracking plastering or walls, the parties doing such damage are liable therefor.

The criterion of liability for a supposed private nuisance affecting bodily comfort is, whether the inconvenience should be considered as more than one of mere delicacy or fastidiousness, or an inconvenience materially interfering with the ordinary comfort of human existence.

*Coram* STOWE, P. J., and a jury. December 10, 1878.

Case, to recover damages for injury to the plaintiff house, and for personal annoyance.

The plaintiffs owned a frame house, alongside of which the defendants erected a shovel factor (the two buildings touching), in which there were several large tilt hammers and a steam hammer in pretty constant use, from 7 A. M. till 6 P. M., and at times until 9 P. M.

The declaration contained, *inter alia*, separate counts for injuries to the plastering of plaintiffs' house, caused by the shaking of the ground by the hammers ; for depreciation in the value of the property arising from the same cause, and for annoyance arising from the noise of the hammers.

Considerable testimony was taken to show physical injury caused to the plaintiffs' property, but the claim fo

damages for depreciation in value was not pressed, the testimony not warranting it.

Stowe, P. J., charged the jury as follows:—

The general rule of law is, that one may not use his property so as to do injury to another ; but this is subject to the qualification that he may use it in the ordinary way, or for such purposes as it is commonly used in the community in which the property is located. One therefore does not subject himself to damages for using his property in the ordinary way under such circumstances, though such use may be some disadvantage or annoyance to his neighbor. Thus I am not liable for the ordinary smoke coming from the chimneys of my dwelling house, though it be the means of annoying or damaging my neighbor by throwing soot or other dirt from smoke upon him.

In other words, in a community like this, where, in the language of Agnew, C. J., "An every day cloud of smoke from thousands of chimneys hangs like a pall over it," the people who live within the sphere of its influence do so from choice, and voluntarily subject themselves to its peculiarities and its discomforts for the greater benefit they think they derive from their residence or business there. As said in another case. "If a man lives in a town, of necessity he must submit himself to the consequences of the obligations of trades which may be carried on in his immediate neighborhood which are actually necessary for trade or commerce ; also for the enjoyment of property and for the benefit of the inhabitants of the town."

Where the annoyance or injury arising from the use and consequent clatter or motion to adjoining property or machinery is in question, its solution becomes a matter of considerable difficulty—not perhaps so much in reference to the principle of law governing such cases as in its proper application to the particular case in hand. Notwithstanding what we have said before, we cannot say that the mere fact that a factory may be used for the making of useful or necessary articles of trade, even in this community, prevents its being such a nuisance as would prevent one injured from recovering damages.

A glue factory is a nuisance in a populated place if it emits, as I believe it necessarily does, disagreeable or offensive odors.   So a powder factory is a nuisance, under the same circumstances, because of the constant danger from explosion.   It is also clear that, even here, where a factory is erected near or adjoining the house of another, and the machinery is such as in its use so shakes the ground upon which it is erected as by shaking the adjoining property to do actual physical injury or damage to buildings or structures thereon, ordinarily well and substantially built, by shaking down or cracking plastering or walls or otherwise doing actual damage thereto, the parties causing such injury are liable therefor.

So as to noise, if that is so great as to be injurious to health or to be such an annoyance as would cause actual substantial discomfort, it would be actionable.   By this I mean such annoyance as materially interferes with the ordinary comfort incident to human existence under the general habits and customs of the community in which one resides.   It seems to me quite clear that for such smoke, vapors or smells as may emanate from a neighbor's premises as the necessary result of a legal business or use which are merely disagreeable and ordinary or peculiar to the general community in which one resides, no action is maintainable.   To make such actionable they must produce some sensible and substantial effect upon physical comfort.

The criterion of liability for a supposed private nuisance, affecting the bodily comfort of the plaintiff, is whether the inconvenience should be considered as more than one of mere delicacy or fastidiousness or an inconvenience materially interfering with the ordinary comfort of human existence, not merely according to elegant or dainty modes and habits of living, but according to the plain and simple modes which are incident to the life of the masses of our people. (St. Helen's Smelting Co. vs. Tipping, 11 H. L. Cas. 642.)

. The Court then instructed the jury as to the measure of

· damages in case they thought the plaintiff was entitled
to recover.

The verdict was for plaintiff for 6¼ cents damages.

[See Richardson vs. Oberholtzer, 2 Weekly Notes, 332; Harrison vs. St.
Mark's Church, 3 Id. 384; Biggs vs. Votler, 4 Id. 272; Sellers vs. Penna. R. R. Co.,
1 Id. 295.]

# NOTES OF RECENT DECISIONS.

*Illegal contract: contract as to bidding at Sheriff's sale, not.*
—An agreement between two persons that one of them
shall bid up a property at Sheriff's sale to a certain figure
and then re-sell it to the other, is perfectly legitimate.
Quebec Ct. of Review, April 30, 1878.   Grenier vs. Le-
roux.

*National bank: usury: may charge any interest State bank
allowed to.*—A national bank is not limited as to the rate
of interest it may charge by the general law of the State
in which it is located, but may legally exact whatever
rate of interest, different from the general rate, shall be
allowed by the State to State banks of issue.   U. S.
Circ. Ct., W. D. Pennsylvania.   June 3, 1878.   First
National Bank vs. Duncan (Int. Rev. Rec.)

*Removal of cause: action foreclosing mortgage: when not re-
movable: cross-bill does not affect.*—(1) Where D., a citizen of
California, filed a bill to foreclose a mortgage against M.,
the mortgagor, also a citizen of California, and F. a sub-
sequent incumbrancer and a citizen of New York, there
can be no final determination of the controversy between
D. and F. without the presence of M., and the suit is not
removable by F. to the Circuit Court of the United States
under section 639 of the Revised Statutes.   (2) Neither in
such case where the only controversy is as to the validity
of the mortgage, and whether there is anything due on it,
is there a controversy which is *wholly* between citizens of
different States, or which can be *fully* determined as be-
tween them, within the meaning of section 2 of the act of
March 3, 1875 (18 Stat. 470), and the case cannot be re-
moved to the National courts under the provisions of that
act.   (3) Where a cross-bill filed by one defendant against

complainant, and its co-defendant only sets up against the same matter as that set up in the respective answers of the defendants to the original bill, it is merely matter of defence, and in no way affects the right of removal under the statutes cited. U. S. Circ. Ct., California. Donohue vs. Mariposa L. & M. Co. [Pac. C. L. J.]

*Suretyship: bail bond invalid if not for legal offense.*— There can be no judgment against the sureties on a forfeited bail bond that does not describe any offense against the Penal Code of the State. Ct. App., Texas, Feb. 27, 1878. Foard vs. State [Texas L. J.]

*Usury: payment of commissions to loan brokers, not.*—Payment of commissions to loan brokers for effecting a loan does not render the contract of lending usurious, unless it appears that the claim for commissions was but a device of the lender to evade the usury laws and so obtain a larger sum for the use of his money. The payment of commissions to the broker not being a condition imposed by the lender, but the subject of an agreement between the borrower and the broker as compensation for his services in effecting the loan, the loan will be upheld. U. S. Circ. Ct., N. D. Illinois, June 18, 1878. Eddy vs. Badger [Chi. L. N.]

*Widow's third: not divested under sale.*—A widow's third constitutes such an estate in land as to be free from the hazard of divestiture by a sale under a junior incumbrance; but installments due and payable out of such estate and an arrear at the time of Sheriff's sale, made on a subsequent judgment, with no fixed lien or mortgage intervening, are discharged thereby and are payable out of the fund the sale produces. Dickson vs. Beyer, Sup. Ct., Pa., 35 Legal Intelligencer, 483.

*Suit on bond: interest.*—Where a surety has no notice of the default of his principal before suit brought on the bond, and no demand has been made upon him, interest can be claimed only from the date of the writ. Sureties are only liable for such interest as accrued from their own default in unjustly withholding payment after being notified of their principal. United States vs. Hill et al. U. S. Circuit Court, D. Mass. 6 Reporter, 771.

*Insolvent proceedings: alias ca. sa.*—An *alias ca. sa.* may be issued against a defendant who, on his arrest under the original *ca. sa.* gave bond to the Sheriff under the insolvent act, and was released from custody, but was refused a discharge under such act. The plaintiff is not restricted to an action on the bond. He may sue on the bond or have an *alias ca. sa.* or issue execution goods or lands, or bring an action on the judgment. Such *alias ca. sa.* may be sued out at the instance of the surety on the insolvent bond, who, after forfeiture of the bond, has paid the plaintiff and taken an assignment of the judgment. State ex rel. vs. Blundell Ct. of Errors and App., N. J., 6 Reporter, 785.

*Parent and child: gift.*—Where a parent, in consideration of love and affection, makes a gift of exempt property to his child, completes the transfer by a manual delivery of the property, fraud cannot be imputed to the transaction, because it is voluntary, and the child will hold the property as against the creditors of the parent. Carhart et al. vs. Harshaw, Supreme Court Wisconsin 1 Wisconsin Legal News, 93.

*Easement: when it passes.*—In order to have a right of easement in one piece of land, passed by the grant of another parcel, it must be an existing easement actually appurtenant by use and enjoyment, and by having been exercised with the occupation of the latter parcel. Decorah Mill Company vs. Greer et al. Supreme Court, Iowa, 12 Western Juror, 730.

*Stipulations by attorney.*—Where an attorney of record, acting under specific instructions from his client, enters into a written stipulation in respect to the matters in controversy, the client is bound by such stipulation. Albee et al. vs. Hayden, Supreme Court Minnesota, 6 Reporter, 780.

*Slander : actionable words.*—Words which directly tend to the prejudice of any one in his office, profession, trade or business, are actionable without proof of special damages. Spiering vs. Andrae, Supreme Court, Wisconsin, 1 Wisconsin Legal News, 91.

WE publish below rather a novel mode for the election of a judge. We are not prepared to say but that a provision in the constitution of Pennsylvania, similar to that in the West Virginia constitution would expedite the legal business materially of our State.

The Court of Appeals of West Virginia has recently rendered an interesting decision in a case, which discloses another instance of the looseness of our statutory laws, and suggests the importance of more specific legislation upon one question at issue.

The case is that of the State vs. Sarah J. Williams on an indictment for the murder of Jemima Green, tried in the Circuit Court of Braxton, and in which the jury rendered a verdict of guilty of murder in the first degree. The motion for a new trial was overruled by the Circuit Court and the case comes up to the Court of Appeals on a bill of exceptions on behalf of the defence, raising a number of questions which have severally been passed on by the latter Court, but only one of which we desire to notice.

The trial of the case in the Circuit Court, in which the verdict was found against the defendant as above stated, was held at a "special term" called by the judge of that Court. But the regular judge failed to attend. In case of the failure of the judge to attend upon a general term of the Circuit Court, the statute provides that the members of the bar may elect from among their own number a special judge to preside during the term, with like powers and giving the same validity to the proceedings of the court as if presided over by the regular judge.

Acting in strict conformity with the statute referred to, the Braxton bar did elect in this instance a special judge, who presided at the special term appointed for the hearing of the case in question, and at which the trial was had and the verdict rendered as above stated.

One of the points raised by the defense on appeal is the constitutionality of the act which provides for such election of a special judge. Upon one branch of this question the Court of Appeals are unanimous in the

opinion that " The act of the Legislature, chap. 129,Acts 1872-3,which provides for electing a special judge by the members of the bar to hold the general term of a Circuit Court, where from any cause the judge fails to appear, or if present, cannot preside. is Constitutional."

But upon another point arising in the same connection —and it is the point to which we refer—the court failed to agree. The question refers more particularly to the meaning of the act itself, which authorizes the election of a special judge, and is thus stated in the opinion of the Court: "Whether that act authorizes the election by the members of the bar, of a special judge to hold a special term of said court, when the judge having called the special term fails to attend, and if so, whether such act as applies to a special term is constitutional or not, the court is equally divided."

Upon all the points passed upon excepting the constitutional question, the court was a unit, but upon that they divide, Judges Johnson and Green filing a dissenting opinion upon this point alone. The case was reversed on the ground that the verdict was not warranted by the evidence. The action of the court on the act of 1872-3, does not establish a precedent, but it does leave the meaning and effect of the act in that uncertain state, as virtually to render it inoperative and too hazardous to justify any Court in acting upon it while its intent is so obscure, or its validity under the constitution so questionable as that the Court of Appeals cannot determine it.

If the act is of any importance, and it is certainly so regarded, the next Legislature should make it sufficiently specific to be useful. As we understand the opinion of the Court, the difficulty is not with the meaning, or perhaps the constitutionality of the provision when applied to the election of a special judge for a *general term*, but in electing a special judge for a *special term*. It is doubtless more frequently the case that a special judge is needed for a special than a regular term,and the benefits of the act,if thus limited, are very much abridged.